FILED

2015 Sep-28  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MONTAGUE MINNIFIELD,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **Case No.: 2:14-CV-789-KOB** |
| **CITY OF BIRMINGHAM,** ] | |
| ] | |
| **Defendant.** ] | |

### <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant City of Birmingham's "Motion for Summary Judgment." (Doc. 15). Plaintiff Montague Minnifield sued the City of Birmingham under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.* (Doc. 2). Officer Minnifield alleges that the City discriminated against him on the basis of his race by denying him a position as a Motor Scout following his successful completion of Motor Scout school in August 2010, and by denying him a position as a TSA K-9 handler in December 2011. Officer Minnifield also alleges that the City retaliated against him in 2011-2012 by denying him a Motor Scout position after he filed grievances with the Personnel Board of Jefferson County and the Equal Employment Opportunity Commission.

For the reasons discussed below, the court will grant the City's motion for summary judgment as to Officer Minnifield's § 1983 claim, Title VII race discrimination claims, and all requests for punitive damages. However, the court will deny the City's motion for summary judgment as to Officer Minnifield's Title VII retaliation claim as to the Motor Scout position.

1

## II.      Facts

Officer Montague Minnifield, a black male, has worked with the Birmingham Police Department since 1997. Deputy Chief Moody Duff, a black male, commanded the Tactical Unit, and Chief A. C. Roper, a black male, commanded BPD during the relevant time period.

### A.      2009 - 2010

In 2009, Officer Minnifield joined BPD's Tactical Unit. Around August 2009, before joining the Tactical Unit, Officer Minnifield filed a grievance concerning his failure to be appointed to or selected for the Tactical Unit. He withdrew the grievance after Deputy Chief Duff informed him he would be joining the Tactical Unit. The Tactical Unit is an elite group of officers with various specialties and positions, including the Motor Scout and TSA K-9 handler positions.

TSA K-9 handlers are police officers in the Tactical Unit that work with federal government bomb dogs at the Birmingham airport. TSA K-9 handlers are afforded a five-percent hazard pay increase. Officer Minnifield first applied for a TSA K-9 handler position in 2009. Officer Terreance McKee, a black male, received the position.

Motor Scouts are officers in the Tactical Unit who are assigned motorcycles and, in addition to performing their normal policing duties, provide escorts for special events like football games, funerals, and parades. Because of the dangers associated with the position, Motor Scouts are afforded a five-percent hazard pay increase. Motor Scouts also receive the additional benefit of being permitted to use a police motorcycle to commute to and from work.

To become a Motor Scout, a police officer must volunteer for the position, must have worked for BPD for three years, must pass an entrance exam, must pass Motor Scout school, and

must be approved by the commander of the Tactical Unit and Police Chief. BPD holds a Motor Scout school whenever BPD needs additional Motor Scouts. The officers who successfully complete Motor Scout school are typically assigned a motorcycle within a few months of completing the course.

In 2010, Officer Minnifield applied for and was admitted to Motor Scout school. In August 2010, Officer Minnifield successfully completed Motor Scout school along with Officer Merriman Bell, a black male; Officer Alex Thomas, a white male; Officer Jason Lawley, a white male; and two UAB police officers. Although allowed to attend, Minnifield alleges Officer Thomas did not have the minimum qualifications to participate in Motor Scout school in August 2010. (Doc. 20-1 at 18-19). After graduating from the school, the officers waited to be assigned motorcycles.

**B.     2011**

In July 2011, BPD posted another TSA K-9 handler position. On July 14, 2011, Officer Minnifield sent a request to Lieutenant Theopolis Smith, a black male, asking about the status of Officer Minnifield's Motor Scout position, presumably because Officer Minnifield also wanted to apply for the new TSA K-9 position.

About a week later, in late July or early August 2011, Officer Thomas received a text message from Lieutenant Smith informing him that Thomas was guaranteed a Motor Scout position. (Doc. 16-6 at 9).  After learning about the text message, Officer Bell complained to Sergeant Donald Webber, a black male, about what he viewed as BPD's racially-motivated decision to guarantee Officer Thomas a Motor Scout position. Officer Bell also told Sergeant Webber that he and Officer Minnifield were considering taking legal action against BPD over the

3

Motor Scout position. Sergeant Webber told Officer Bell that Deputy Chief Duff had responded by saying "bring it on." (Doc. 16-19 at 11).

On August 11, 2011, Officers Minnifield, Bell, and Thomas filed an employee grievance with the Personnel Board of Jefferson County regarding the denial of the motor scout positions. The Board determined that his allegations related to internal administrative matters and could not to be heard through the grievance procedure. Officer Minnifield then filed a charge of discrimination with the EEOC on October 27, 2011 related to his failure to be assigned a Motor Scout position because of his race.

In response, Deputy Chief Duff stated that, because Officer Minnifield and Officer Bell had filed a grievance and an EEOC charge, "no movement would be made on the motor scouts." (Doc. 16-19 at 9-10). Citing safety concerns, Deputy Chief Duff changed the Motor Scout school class structure, and required Officers Bell, Minnifield, Lawley, and Thomas to retake Motor Scout school before being assigned a Motor Scout position. This decision marked the first time BPD failed to assign an officer who successfully completed Motor Scout school to a Motor Scout position, and also the first time BPD required a successful Motor Scout school graduate to retake the course.

After the August 11, 2011 grievance, Officer Minnifield filed several additional grievances with the Personnel Board. The record is not clear on the exact number or timing of his grievances, but Officer Minnifield filed a grievance against Sergeant John Callahan, a white male, after Minnifield asked Sergeant Callahan to allow Minnifield and Bell to use Minnifield's take-home police car to take care of a personal errand and Sergeant Callahan responded that Officer Minnifield could not use the vehicle because he might "do a drug deal in the police car."

4

(Doc. 16-6, 16). Officer Minnifield perceived this comment as racist. Officer Minnifield also filed an additional grievance against Sergeant Callahan related to unit safety. Finally, on August 19, 2011, Minnifield filed a grievance against Sergeant Callahan related to a request to pick up his daughter during his lunch break. (Doc. 16-8 at 3). Sergeant Pruitt confirmed that Superior officers have "voiced opinions that they're just basically concerned about all of the grievances" Officer Minnifield has filed. (Doc. 16-32, 8).

In November 2011, Officer Minnifield applied for the TSA K-9 handler position posted in July 2011 along with Officer Larry Phillips, a white male, and Officer Dennis Gibson, a black male. Sergeant Heath Boackle, an Arabic American male in charge of all BPD K-9s, considered all three officers qualified for the position.

On December 14, 2011, Officer Minnifield received a suspension of three days for a failure to submit the necessary paperwork to request off-duty work after an investigation led by Sergeant Callahan. Minnifield's "missing" work request was subsequently located, but Chief Roper did not rescind the suspension.

On December 16, 2011, Sergeant Boackle recommended Officer Phillips, a white male, for the TSA K-9 handler position to Captain Richard Davis, a black male. Chief Roper ultimately approved the recommendation "based on Officer Phillip's qualifications, recommendations, disciplinarian history and seniority." (Doc. 16-25, 5).

On December 27, 2011, Officer Minnifield amended his charge of discrimination with the EEOC to include the TSA K-9 handler position. (Doc. 2, 11).

### C.    2012 - 2013

In January 2012, BPD offered Officer Minnifield a patrol dog position. Patrol dogs are

different than TSA K-9 dogs. Further, no dog existed at the time for the position offered. Officer Minnifield refused the patrol dog position.

In February 2012, BPD held the next Motor Scout school and Officers Minnifield, Bell, and Thomas successfully repeated the course. Officer Lawley chose not to repeat the course and BPD assigned him to a position with the Freeway Unit, but also allowed him to ride horses at special events and receive extra pay.

In April 2012, Lieutenant James Blanton, a black male, stated that he was sent to the Tactical Unit to keep down confusion and to stop officers from filing grievances. In May 2012, BPD assigned Officer Minnifield to a Motor Scout position, and he received the accompanying five-percent pay increase. Officers Bell and Thomas also received Motor Scout positions.

On June 6, 2012, the EEOC closed its file on Officer Minnifield's amended EEOC charge and issued him a right to sue letter. (Doc. 2 at 13). On July 31, 2012, Officer Minnifield brought the current suit against the City. (Doc. 2).

## II.    Standard of Review

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id.* at 255.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274,1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### III.    Discussion

### A.    Scope of Officer Minnifield's Claims

Before analyzing the substance of Officer Minnifield's claims, the court must determine which claims are properly before the court. Officer Minnifield's complaint contains the following counts: Count I, a § 1983 claim for race discrimination and retaliation; Count II, a Title VII claim for race discrimination and retaliation related to the August 2010 Motor Scout school; and Count IV, a Title VII claim for race discrimination related to the December 2011 TSA K-9 handler position.[1]

Before filing a Title VII action, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the last act of discriminatory treatment. 42 U.S.C. § 2000e-5(f)(1). Officer Minnifield filed his charge of discrimination on October 27, 2011, and his amended charge of discrimination on December 27, 2011. (Doc. 2, 10-11). Any claims arising more than 180 days before Officer Minnifield's October 27, 2011 charge of discrimination are untimely. Any claims related to the failure to award Officer Minnifield the 2009 TSA K-9 handler position occurred more than 180 days prior to the October 27, 2011 EEOC claim and, therefore, are untimely. The court will not review any claims related to such incident.

A plaintiff must file his Title VII complaint within 90 days of receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The court cannot hear a Title VII claim until

---

[1] This case was originally brought jointly by Officer Minnifield and Officer Bell, and contained four counts, with Count III pertaining solely to Officer Bell. On April 29, 2014, the court severed the claims of Officer Bell and Officer Minnifield. (Case No.: 2:12-cv-02590-KOB, Doc. 37). Thus, the court will only address Counts I, II, and IV in this opinion.

the plaintiff receives a right to sue letter from the EEOC. *See Fouche v. Jekyll Island State Park Authority*, 713 F.2d 1518, 1525 (11th Cir. 1983) (explaining that all Title VII procedural requirements are viewed as conditions precedent to suit).  On June 6, 2012, the EEOC dismissed Officer Minnifield's EEOC charge and issued him a right to sue letter. (Doc. 2 at 13). Any claims arising more than 90 days after Officer Minnifield's receipt of a right to sue letter, including any claims related to the failure to award him the June 21, 2013 patrol K-9 positions, are not administratively exhausted. As such, the court will not review any claims related to that incident.

### B.    The § 1983 Claim

Officer Minnifield brings a § 1983 claim for race discrimination and retaliation in violation of the Fourteenth Amendment. (Doc. 2). As discussed below, the City is entitled to summary judgment on the claim.

Section 1983 does not create any substantive rights in itself, but only creates a remedy for violation of other federal law. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979). For a municipality to be held liable under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). Under this color-of-state-law requirement, a municipality can only be held liable under § 1983 when the plaintiff's injury results from a government policy or custom. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *see Grech v. Clayton Cnty.,* 335 F.3d 1326, 1329-30 (11th Cir. 2003) (explaining that a plaintiff may establish municipal liability by showing either that the municipality had an officially promulgated policy of permitting the alleged constitutional violation, or that it had an unofficial custom or practice that was the moving force behind the constitutional violation); *Gold*

*v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under § 1983] for the actions of [an employee] only when municipal 'official policy' causes a constitutional violation."). A "custom" is a practice "so pervasive and well-settled that it assumes the force of law." *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000).

In the present case, Officer Minnifield fails to present evidence that Deputy Chief Duff's decision to require Officer Minnifield to repeat Motor Scout school or Chief Roper's decision to award the TSA K-9 handler position to Officer Phillips was pursuant to any policy or custom. The City adheres to an Equal Employment Opportunity Policy that prohibits race discrimination and retaliation in all personnel decisions. Thus, assuming, as Officer Minnifield alleges, that Deputy Chief Duff and Chief Roper's decisions were motivated by Officer Minnifield's race or in retaliation for his complaints of race discrimination, the City's actions are not pursuant to an official policy.

Likewise, the record is devoid of any evidence that the City acted pursuant to any "pervasive and well-settled" custom. Minnifield argues that instances of alleged retaliation against Minnifield -- by Sergeant Callahan, Deputy Chief Duff, Lieutenant Blanton, and Chief Roper -- create a custom of discrimination. Minnifield must show a custom of retaliation by the City "so well-settled and pervasive that it assumes the force of law." *Denno*, 218 F.3d at 1277; *see also Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[A]ctual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy.")  Minnifield's instances of alleged retaliation in late 2011 and early 2012 do not

demonstrate a persistent and widespread practice sufficient to create a custom of retaliation. Most of Officer Minnifield's instances of "retaliation" either stem from one incident, the August 11, 2011 grievance, or are unrelated to his complaints of race discrimination.

Thus, the City is entitled to summary judgment on Officer's Minnifield's § 1983 claim.

**B.     The Motor Scout Race Discrimination Claim**

Officer Minnifield alleges race discrimination based on BPD's failure to place Officer Minnifield in a Motor Scout position for more than two years after he first qualified for the position.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1). Officer Minnifield may establish a *prima facie* case for race discrimination through either direct evidence of discrimination or circumstantial evidence using the *McDonnell Douglas* framework. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Because Officer Minnifield does not point to any direct evidence of race discrimination, the court must use the *McDonnell Douglas* framework to analyze his claim. Under this framework, a plaintiff alleging disparate treatment must first establish a *prima facie* case by "show[ing] (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

In the present case, the City concedes that Officer Minnifield satisfies the first two elements of the *prima facie* case, but contends that Officer Minnifield has not made a showing

11

sufficient to meet the last two elements -- that Officer Minnifield suffered an adverse employment action and that a similarly situated employee outside of Officer Minnifield's protected class received more favorable treatment. Because Officer Minnifield fails to meet the fourth element, the court will not address whether Officer Minnifield suffered an adverse employment action.

Typically, a plaintiff fails to meet the fourth element of his *prima facie* case because the comparator he identifies is not actually similarly situated. In this case, however, the issue is not that Officer Minnifield's comparator, Officer Thomas, is not similarly situated; instead, the issue is that Officer Thomas did not receive more favorable treatment than Officer Minnifield. As the City points out, Officer Thomas successfully completed the same Motor Scout school as Officer Minnifield in August 2010 and, like Officer Minnifield, was not assigned a position as a Motor Scout. BPD required *both* Officer Minnifield and Officer Thomas to retake the Motor Scout school, and BPD assigned both as Motor Scouts after repeating the school. Thus, the record shows that Officer Thomas received *the same* treatment as Officer Minnifield.

Officer Minnifield argues that BPD treated Officer Thomas more favorably when BPD allowed him to participate in Motor Scout school without the requisite qualifications, but this fact is irrelevant. A comparator must be treated "more favorably" than the employee. BPD did not treat Officer Thomas more favorably because neither he, nor Officer Minnifield, got what they wanted – a Motor Scout position in August 2010. Where Officer Thomas *started* does not matter; what matters for purposes of comparator analysis is that Officer Thomas and Officer Minnifield both *ended up* without their desired position. Although BPD may have treated Officer Thomas more favorably by allowing him to attend Motor Scout school, BPD did not treat him

more favorably in the relevant way -- as to the assignment of Motor Scout positions. *See Bryant v. Dougherty Cnty. Sch. Sys.*, 382 Fed. App'x 914, 917 (11th Cir. 2010) ("In the failure-to-promote context, the prima facie case consists of showing . . . (4) that other equally or less-qualified employees outside [his] class were promoted..").

Officer Minnifield also contends that BPD treated Officer Thomas more favorably when Thomas "had been assured that he, unlike African American officers Bell and Thomas, would not have to compete for the position." (Doc. 20 at 16). Minnifield asserts that "Officer Alex Thomas received a text message from [Lieutenant Theopolis Smith] that he has the motor scout position." (Doc. 16-6 at 9). Although Minnifield admits that Officer Thomas received the same treatment as the black officers, he argues that a statement that Officer Thomas would not have to compete for a position is highly preferential treatment. Minnifield argues that Thomas was not promoted despite this "preferential treatment" because he disclosed the preferential treatment to the black officers and subsequently faced retaliation resulting from his disclosure. (Doc. 20 at 16). Importantly, however, *no* officer was promoted to the Motor Scouts at the time. BPD treated all officers the same. *See Bryant,* 382 Fed. App'x at 917. Officers Bell, Minnifield, and Thomas were required to repeat the Motor Scout school before *all* were assigned as Motor Scouts.

Recognizing the problems with using Officer Thomas as his comparator, Officer Minnifield attempts to switch horses mid race and use Officer Lawley as his comparator. Officer Minnifield mentions Officer Thomas in his complaint, but not Officer Lawley. (Doc. 2 at 5). In his response to the City's motion for summary judgment, Officer Minnifield now argues for the first time that "[t]he true comparator is Officer Lawley." (Doc. 20 at 21).

A plaintiff may not change or create new claims in his response to a summary judgment

motion. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)

(finding plaintiffs could not, in response to the defendant's motion for summary judgment, cite

additional discriminatory hiring claims involving additional comparators that were known at the

time the plaintiffs filed their complaint and not listed in the complaint). Officer Thomas is

Officer Minnifield's only possible comparator. However, even if Officer Minnifield could use

Officer Lawley as his comparator, Officer Lawley is not a valid comparator for the same reason

as Officer Thomas. Although BPD assigned Officer Lawley his desired Freeway Unit position,

Minnifield did not request or apply for that position. BPD did not treat Officer Lawley more

favorably than Officer Thomas in the relevant way -- as to the assignment of Motor Scout

positions.[2]

The City is entitled to judgment on this claim because Officer Minnifield failed to

establish a *prima facie* case of discrimination by producing evidence that a similarly situated

employee outside of his protected class received more favorable treatment than he did regarding

the Motor Scout Position.

### C.     The TSA K-9 Handler Race Discrimination Claim

Officer Minnifield alleges race discrimination based on BPD's failure to award him a

TSA K-9 handler position on December 16, 2011, after he qualified for the position.

The same standard applies and Minnifield  must first establish a *prima facie* case by

---

[2] Although Officer Minnifield did not raise this argument, the UAB police officers, who were also in his Motor Scout Class, are also not viable comparators. "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). The UAB police officers do not work for the same police department as Officer Minnifield and no evidence in the record establishes that they perform the same job as Officer Minnifield.

"show[ing] (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The City concedes three elements of Officer Minnifield's *prima facie* case and only argues that he cannot show that BPD treated a similarly situated employee outside of Officer Minnifield's protected class more favorably. The City admits that Officer Phillips is Minnifield's comparator. (Doc. 16 at 26). However, the City merely states that Officer Phillips was more qualified than Minnifield. BPD considered both Officer Minnifield and Officer Phillips qualified for the TSA K-9 handler position, however, and Officer Phillips received more favorable treatment when BPD awarded him the TSA K-9 handler position. Thus, Officer Minnifield has established his *prima facie* case.

Because Minnifield established his *prima facie* case, the burden of production shifts to the City to articulate some legitimate, non-discriminatory reason for the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Bryant*, 575 F.3d at 1308. Here, the City has shown that its legitimate, non-discriminatory reason to hire Officer Phillips was Chief Roper's belief that Officer Phillips had superior "qualifications, recommendations, disciplinarian history and seniority." (Doc. 16-25 at 5). Minnifield has presented no evidence that Chief Roper, a black male, based his recommendation on race. *See Robinson v. United Parcel Serv.*, 1:06-CV-2601-RLV, 2007 WL 348473, at *5 (N.D. Ga. Nov. 14, 2007)(citing *Elrod v. Sears, Roebuck, & Co.*, 939 F. 2d 1466, 1471 (11th Cir. 1991))("When the decision-maker is in the same class as the plaintiff, it is very difficult to show a discriminatory motive.").

15

Finally, because the City produced legitimate, non-discriminatory reasons for choosing Officer Phillips, Officer Minnifield must show that the City's arguments are "merely pretext to mask discriminatory actions." *Bryant*, 575 F.3d at 1308. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). To survive summary judgment, the employee must show "such weaknesses, implausibilities, inconsistencies, incoherence or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004). As the Eleventh Circuit has noted, federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

To rebut the City's proffered reasons, Minnifield does not challenge Chief Roper's assessment of Officer Phillips, but instead seeks to bolster his own qualifications. Minnifield notes that Sergeant Pruitt said he "is a hard worker, a good worker, a good police officer, and has never heard anyone say anything bad about his police work," and that he has heard that Minnifield's "superiors have problems with him, [and] problems with him filing grievances. (Doc. 20 at 17). Officer Minnifield also argues that because he faced retaliatory disciplinary actions, BPD's proffered reasons for promoting Phillips are pretext. Minnifield notes that  BPD disciplined him two days before Chief Roper assigned Officer Phillips to the TSA K-9 handler position in retaliation for the grievances he filed against Sergeant Callahan.

Minnifield seems to argue that because he was qualified for the position, the City's

16

proffered reasons are pretextual.  However, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the person who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citing *Alexander v. Fulton County*, 207 F.3d 1330, 1339 (11th Cir. 2000). Additionally, to argue a qualification disparity establishes pretext, a plaintiff must prove that the disparity between the successful applicant's and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer,* 509 F.3d at 1339. Minnifield's proffered statement from Sergeant Pruitt that he was a hard worker and a good police officer does not provide that his qualifications were "of such weight" that no reasonable person would have chosen him over Officer Phillips.

Similarly, Officer Minnifield cannot bootstrap his retaliation claim into his race discrimination claim to show pretext. Whether Officer Minnifield was retaliated against for filing grievances, some related to race and some not, and whether his superiors did not like that he filed grievances may matter in the context of his retaliation claim. However, Officer Minnifield fails to show that Officer Phillips did not actually have superior "qualifications, recommendations, disciplinarian history and seniority" when Chief Roper selected him. (Doc. 16-25 at 5). Even if Officer Minnifield shows pretext for one criteria -- superior disciplinarian history -- he does not show how the other three bases for choosing Officer Phillips are pretextual. *See Rawls v. Alabama Dept. of Human Res.*, 507 Fed. App'x 895, 900 (11th Cir. 2013) (citing *Chapman*, 229 F.3d 1037) ("[Plaintiff] cannot survive summary judgment unless [his] evidence rebuts all of

[defendant's] proffered reasons."). Because Minnifield failed to meet the City's proffered reasons head on, he fails to establish that the City's proffered reason that Officer Phillips was promoted were pretextual. *Chapman*, 229 F.3d at 1030.

The City is entitled to judgment on this claim because Officer Minnifield fails to rebut the City's legitimate, non-discriminatory reasons for choosing Officer Phillips.

### D. The Motor Scout Retaliation Claim

Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Title VII retaliation claims based on circumstantial evidence are governed by the same *McDonnell Douglas* framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). A plaintiff can establish a *prima facie* case of retaliation by showing that "(1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970. Once the plaintiff meets this burden, the employer has an opportunity to articulate a legitimate non-retaliatory reason for its employment action, which the plaintiff can rebut with evidence of pretext. *Brown*, 597 F.3d at 1181–82.

In the present case, the City concedes that Officer Minnifield engaged in protected activity when he complained about what he viewed as BPD's racially-motivated decision to "guarantee" Officer Thomas a Motor Scout position. The City, however, argues that Officer Minnifield has not presented sufficient evidence to satisfy the final two elements of his *prima facie* case -- that Officer Minnifield suffered an adverse employment action and that the action was causally connected to Officer Minnifield's protected activity.

18

To establish an adverse employment action, a plaintiff must show that the employer's action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Whether an employment action is adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 70–71. The Eleventh Circuit has recognized that Supreme Court precedent on this issue "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford*, 529 F.3d at 973–74, n. 13 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In the present case, Officer Minnifield alleges that he suffered an adverse employment action because, after successfully completing Motor Scout school, BPD denied him a promotion to a Motor Scout position and required him to retake Motor Scout school following his complaints to the Personnel Board and the EEOC. BPD assigned Minnifield a Motor Scout position only after he successfully completed the Motor Scout school for a second time. The Motor Scout position is a prestigious position and includes a five-percent hazardous pay increase as well as the privilege of using a police motorcycle to commute to and from work.  By delaying in awarding Minnifield a Motor Scout position, Minnifield alleges that he was denied the 5 percent pay increase he would have received in the Motor Scout position for up to two years. (Doc. 20 at 20).   Based upon this evidence, a reasonable jury could find that the denial of or delay in awarding the Motor Scout position might well be sufficient to dissuade a reasonable

19

worker from making a charge of discrimination. *See Burlington*, 548 U.S. at 70–71 (concluding that an employment action was materially adverse because the plaintiff was assigned more arduous and less prestigious work as a result); *Crawford*, 529 F.3d at 973 (concluding that an employment action was materially adverse because it denied the plaintiff a merit pay increase). Accordingly, the motion for summary judgment is due to be denied to the extent that it is predicated on the argument that the denial of a Motor Scout position did not constitute an adverse employment action.

To satisfy the causal-relationship element, "a plaintiff merely has to prove that the protected activity and the [adverse] action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir 1998); *see also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). To do so, a plaintiff must at a minimum show that "the person taking the adverse action was aware of the protected expression." *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001), *overruled on other ground by Crawford*, 529 F.3d at 961. Plaintiff may establish such awareness either by direct or circumstantial evidence. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir. 1995); *see Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).

In the present case, Officer Minnifield establishes through direct evidence that Deputy Chief Duff was aware that Officer Minnifield engaged in protected activity and that Deputy Chief Duff took an adverse employment action against Officer Minnifield because he engaged in protected activity. In his deposition, Officer Bell testified: "Deputy Chief Duff said *since we [Officer Minnifield and Officer Bell] filed a grievance and the EEOC complaint[,] no movement would be made on the motor scouts*." (Doc. 16-19, at 9-10) (emphasis added). Accepting this

testimony as true and viewing it in a light most favorable for Officer Minnifield, this showing is sufficient to meet the causation requirement for the purposes of a *prima facie* retaliation case at the summary judgment stage.

Because Officer Minnifield has proven his *prima facie* case, the burden now shifts to the City to articulate a legitimate, non-retaliatory reason for the adverse employment action, which Officer Minnifield may rebut as pretext. *See Brown*, 597 F.3d at 1181–82. The City's explanation of its decision to require Officer Minnifield to repeat Motor Scout School prior to becoming a Motor Scout is because of officer injuries and safety issues with the first Motor Scout school. However, this explanation is not persuasive given Deputy Chief Duff's comments about Officer Minnifield's grievance and EEOC charge.

A jury could find that the City retaliated against Officer Minnifield in late 2011 and early 2012 after he filed his grievance with the Board and his EEOC charge by delaying his promotion to the Motor Scouts and requiring him to retake the Motor Scout school despite his successful completion of Motor Scout school. Thus, the City is not entitled to summary judgment on Officer Minnifield's retaliation claim.[3]

### E.    Punitive Damages

Finally, Officer Minnifield requests punitive damages. However, a plaintiff may not

---

[3] To the extent Officer Minnifield argues that he has made a claim for retaliation related to the City's denial of the TSA K-9 handler position in December 2011, the court finds that Officer Minnifield's complaint does not raise a claim for retaliation related to the TSA K-9 handler position. The complaint only states, in the count related to the Motor Scout position, that "[Officer Minnifield] filed grievances on this matter and [was] thereafter denied transfer to Motor Scouts until May, 2012." (Doc. 2, ¶ 28).

recover punitive damages against a municipality under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1299 (11th Cir. 1998); *see Young v. City of Mobile*, No. CIV.A. 13-0586-KD-B, 2014 WL 2739422, at *2 (S.D. Ala. June 17, 2014). Further, a plaintiff may not recover punitive damages against a municipality under Title VII. 42 U.S.C § 1981a(b)(1); *see Clark v. City of Macon, Ga.*, 860 F. Supp. 1545, 1552 (M.D. Ga. 1994). Therefore, Officer Minnifield may not recover punitive damages for his remaining claim.

### IV.     Conclusion

For the reasons discussed above, the court **GRANTS** the City's motion for summary judgment as to Officer Minnifield's § 1983 claim, Title VII discrimination claims, and all requests for punitive damages. The court **DENIES** the City's motion for summary judgment as to Officer Minnifield's Title VII retaliation claim.

**DONE** and **ORDERED** this 28th day of September, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE